**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SPARKLES WILSON, a/k/a** | : |
| **STEVEN FRITZ,** | : CIVIL ACTION NO. 3:17-CV-1191 |
| | : |
| **Plaintiff,** | : (JUDGE MARIANI) |
| | : |
| **v.** | : |
| | : |
| **LACKAWANNA COUNTY, et al.,** | : |
| | : |
| **Defendants.** | : |
| | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendants Correctional Care, Inc. a/k/a Correctional Care, PC's and Dr. Edward Zaloga's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (Doc. 65). With the Motion, Defendants Correctional Care, Inc. ("CCI") and Zaloga seek summary judgment in their favor on all remaining claims against them contained in Plaintiff's Complaint. (Doc. 1.) Plaintiff filed the Complaint while incarcerated at Lackawanna County Prison based on the denial of medication she had been prescribed to treat gender dysphoria. (*Id.* ¶¶ 27-64.) For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

### II. BACKGROUND

Plaintiff's claims against Defendants CCI and Zaloga arise from events which occurred while Plaintiff was incarcerated at the Lackawanna County Prison beginning on

January 20, 2017, as both a pretrial and post-trial detainee.[1]  Prior to her incarceration,

Plaintiff alleges that she had been diagnosed at SCI Houtzdale with gender dysphoria.

(*See, e.g.*, Doc. 77 ¶ 12)   Plaintiff explains that she is a

> transgender female who was born with male genitalia and given the name
> Steven Fritz at birth, but who identifies as a woman and chooses to be known
> as Sparkles Wilson. (Exhibit A at 5-6, 39, 51). Plaintiff suffers from Gender
> Dysphoria. (Exhibit G at 3). Gender Dysphoria is a psychiatric diagnosis under
> the DSM V in which a person experiences distress because the gender that
> they were assigned at birth does not match the gender with which they identify.
> (Exhibit B at 6, p. 24; Exhibit G at 1). "Gender identity disorder" and "Gender
> Dysphoria" are two names for the same condition. (Exhibit B at 11. p. 44, Exhibit
> D at 135). Gender Dysphoria must be diagnosed by a mental health
> professional. (Exhibit D at 16). However, Gender Dysphoria is required to be
> treated both psychiatrically and physically. (Exhibit B at 8-9, pp. 32-33; Exhibit
> D at 15). Treatments include, but are not limited to, hormone therapy,
> counseling, and surgery. (Exhibit B at 9, p. 33). Medical doctors, rather than
> mental health professionals, provide the hormone therapy and surgery once a
> diagnosis is made. Treatment for Gender Dysphoria is medically necessary.
> (Exhibit C at 5, p. 20; Exhibit D at 19; Exhibit G at 2). Gender Dysphoria is a
> serious medical need, and the alteration of treatment can cause physiological
> changes and psychological harm. (Exhibit G at 2-3). Specifically, the cessation
> of hormones can be devastating to a patient. (Exhibit G at 2).

(Doc. 78 at 5.)

At the time of her incarceration, Plaintiff had been taking prescribed hormone

medications (Estradiol and Aldactone) which she requested at the Lackawanna County

Prison.  (Doc. 66 ¶ 2; 77 ¶ 2.)  She filed a grievance about not receiving the prescribed

---

[1] Plaintiff does not elaborate on her status.  (*See* Doc. 78 at 17.)

medication on February 6, 2017, and received a response from Dr. Zaloga on February 17, 2017, that she was receiving all required medications.[2]  (Doc. 66 ¶¶ 2, 5.)

CCI nurse practitioner Anthony Iannuzzi noted on February 18, 2017, that Plaintiff had been treated for gender dysphoria, and he requested hormone medication for her. (Zaloga Dep. (Pl.'s Ex. B) 107:3-9, Doc. 77-2.)  Plaintiff received a few doses of hormone medication before it was stopped by Dr. Zaloga without explanation.  (Zaloga Dep. (Pl.'s Ex. B) 107:3-16, 110:4-1, 113:7-12, Doc. 77-2; CCI Medical Records (Pl.'s Ex. H) 052, Doc. 77-8.)  At the same time that Dr. Zaloga wrote the order to stop the medications, he wrote orders to get records from providers who had "diagnosed and prescribed treatment for gender dysphoria disorder" and to get the records from "pharmacies dispensing estradiol and Aldactone for gender dysphoria for the period 2/1 of 2016 through today."  (Zaloga Dep. 111:3-6, Doc. 77-2.)

Upon review of medical records received on February 28, 2017, Dr. Zaloga determined that hormone treatment was not appropriate for Plaintiff based on his review of a progress note dated December 3, 2015, where CRNP Akinola Mobalaji concluded that Plaintiff, an inmate at SCI Houtzdale at the time, did not meet the criteria for gender dysphoria.  (Doc. 66 ¶¶ 14, 15, 17; Defs.' Ex. H, Doc. 66-1 at 21; Pl.'s Ex. H, Doc. 77-8 at 106; Zaloga Dep. 101:9-102:15, Doc. 77-2.)

---

[2] According to Plaintiff's Complaint, Edward Zaloga, D.O., "owns, operates, controls, maintains, and is President of [CCI]."  (Doc. 1 ¶ 12.)

Plaintiff filed another grievance about not receiving her medications on March 11, 2017, and she was again told that she was receiving all of the medications she needed. (Doc. 66 ¶¶ 20,21.)  On or about April 26, 2017, Plaintiff submitted a request to the Medical Department for hormone pills.  (*Id.* ¶ 22.)  The Medical Department's May 3, 2017, response indicated that hormone pills would not be provided because the risk of a serious side effect outweighed any perceived benefits.  (*Id.* ¶ 23.)

Plaintiff filed the above-captioned action on July 7, 2017, against numerous Defendants, including Dr. Zaloga and CCI.  (Doc. 1.)   Dr. Zaloga and CCI are the only remaining Defendants.[3]  (Doc. 68 at 2.)  Following dismissal of the state law claim for civil conspiracy in Count V (*see* Docs. 29, 46, 47), the Complaint contains the following claims against Defendants CCI and/or Zaloga: Count I – Municipal Liability and Civil Rights Violations Caused by Policy in accordance with 42 U.S.C. § 1982 and the VIII and XIV Amendments to the United States Constitution, against CCI and Dr. Zaloga; Count II – Individual Violations of the VIII and XIV Amendments to the United States Constitution

---

[3] Defendants state that

Plaintiff named as Defendants Lackawanna County, Lackawanna County Prison Board, Warden Tim Betti, Deputy Warden Brian Langan (collectively, "County Defendants"), Correctional Care, Inc., Edward Zaloga, D.O. (collectively, "Medical Defendants") and John/Jane Doe Medical Staff I-X. (*Id.*) Plaintiff has since voluntarily dismissed the claims against the County Defendants. The fictitious defendants, John/Jane Doe Medical Staff I-X have never been named, and the caption has not been amended to include additional Defendants.

(Doc. 68 at 2.)  Plaintiff does not dispute that Dr. Zaloga and CCI are the only remaining Defendants.  (*See* Doc. 78.)

against Dr. Zaloga; and Count III - Intentional Infliction of Emotional Distress against Dr. Zaloga. (Doc. 1 at 11-13.) The Prayer for Relief includes a request for punitive damages. (*Id.* at 13.)

Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) was also filed on July 7, 2017. Plaintiff sought to mandate "Defendants, and all persons acting on their behalf, to provide necessary medical treatment to Plaintiff . . . pending entry by the court of a final judgment in this action." (*Id.* at 2.) On the same day, the Court entered a Temporary Restraining Order in which the Court stated that "Defendants Correctional Care, Inc. and Edward Zaloga, D.O. are directed to immediately provide Plaintiff with the medications Premarin and Estrace. These medications shall be provided to the Plaintiff in accordance with the prescriptions prescribed to Plaintiff by physicians at SCI Houtzdale and the Wright Center." (Doc. 5 ¶ 4.) The Court also scheduled a Preliminary Injunction Hearing for July 17, 2017. (*Id.* ¶ 7.) At the scheduled hearing, the parties informed the Court that they had resolved the matter of preliminary injunctive relief which obviated a need for a hearing. (*See* Doc. 23 at 1.) The parties agreed to the following stipulation as stated by counsel for Defendants CCI and Zaloga, Joseph Healey.

> We are here today for a hearing on the continuation of a Temporary Restraining Order requiring Dr. Edward Zaloga to administer certain hormones to the Plaintiff Ms. Wilson in this matter.
>
> In an effort to resolve this claim, Dr. Zaloga is willing to continue to administer hormones, pursuant to the Wright Center prescription.

It is also my understanding that, inherent with the administration of these hormones, that there are potential side effects. It is my understanding and appears to be agreed to by Plaintiff Ms. Wilson that she will understand and assume any potential side effects of the administration of these hormones.

And I believe that constitutes the entirety of the agreement between the parties.

(July 17, 2017, Hr'g Tr. 5:16-6:4, Doc. 25.) By Order of July 17, 2017, the Court adopted the stipulation, denied the Motion for Preliminary Injunction as moot, and dissolved the Temporary Restraining Order. (Doc. 23 at 3.)

On December 16, 2019, Defendants CCI and Zaloga filed the Motion under consideration here. (Doc. 65.) The Motion is fully briefed and ripe for disposition. Defendants seek summary judgment in their favor on Counts I-III. (Doc. 68.) They also assert that Dr. Zaloga is entitled to qualified immunity on the 42 U.S.C. § 1983 claim and Plaintiff's punitive damages claim fails as a matter of law. (Doc. 68 at 13, 18.) Plaintiff does not dispute Defendants' argument that they are entitled to judgment on Count III for Intentional Infliction of Emotional Distress ("IIED"). (*See* Doc. 78.) Therefore, summary judgment in Defendants' favor will be granted on the IIED claim.[4] The Motion will be denied in all other respects.

---

[4] This conclusion is not based on a determination of the merits of Plaintiff's IIED claim (Doc. 1 ¶¶ 103-105) or Defendants' argument as to why they are entitled to summary judgment on the claim (Doc. 68 at 17-18).

6

### III. STANDARD OF REVIEW

Summary judgment "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a

7

genuine dispute, or that an adverse party cannot produce admissible evidence to support

the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).  In evaluating whether summary judgment should

be granted, "[t]he court need consider only the cited materials, but it may consider other

materials in the record." Fed. R. Civ. P. 56(c)(3).  "Inferences should be drawn in the light

most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW,*

*Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912,

113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the summary

judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts.  Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial.  The mere existence of some alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for summary
> judgment; the requirement is that there be no *genuine* issue of *material* fact.
> When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a court
> should not adopt that version of the facts for purposes of ruling on a motion for
> summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make

credibility determinations or engage in any weighing of evidence."  *Anderson*, 477

8

U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of

witnesses may be in issue, or when conflicting evidence must be weighed, a full trial

is usually necessary.

## IV. ANALYSIS

### A. Constitutional Claims

Counts I and II of Plaintiff's Complaint are brought pursuant to 42 U.S.C. § 1983

which states in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C.A. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that

"(1) ... the conduct complained of was committed by a person acting under color of state law

and (2) ... [that] the conduct deprived the complainant of rights secured under the

Constitution or federal law." *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 590 (3d

Cir.1988).  Here, the first element is not at issue.  Defendants allege only that Plaintiff has

not been deprived of a constitutional right.

Plaintiff asserts that her right to relief in Counts I and II of her Complaint arises under

the Eighth and Fourteenth Amendments to the United States Constitution, i.e., her "Right to

Due Process and Right to be Free from Cruel and Unusual Punishment."  (Doc. 1 ¶¶ 94,

97.)  Because Plaintiff states that she is both a pretrial and post-trial detainee, *see supra* pp. 1-2 & n.1, the Court will first consider the relevant standard to be applied to her claims.

"The Eighth Amendment's proscription of cruel and unusual punishments is violated by 'deliberate indifference' to serious medical needs of prisoners." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983).  In *Hubbard v. Taylor*, 399 F.3d 150 (3d Cir. 2005), the Circuit Court explained that "*Bell v. Wolfish*[, 441 U.S. 520 (1979),] distinguishes between pretrial detainees' protection from 'punishment' under the Fourteenth Amendment, and convicted inmates' protection from punishment that is 'cruel and unusual' under the Eighth Amendment."  399 F.3d at 166.  As stated in *Hubbard*, *Revere* "viewed the Eighth Amendment as relevant to conditions of pre-trial detainees only because it established a floor.  The Court explained: 'the due process rights of [a pre-trial detainee] are *at least* as great as the Eighth Amendment protections available to a convicted prisoner."  399 F.3d at 165-66 (quoting *Revere*, 463 U.S. at 244).  *Hubbard* noted that the Third Circuit analyzes a pretrial detainee's claim for inadequate medical care under the Eighth Amendment standard: "even though the constitutional protections afforded prisoners and pretrial detainees against inadequate medical care arise from different textual sources, the standards governing the provision of medical care to each class are similar."  399 F.3d at 166 n.22 (citations omitted).  Thus, the analysis of Plaintiff's medical care claim is not affected by whether she is classified as a pretrial detainee or a post-trial convicted inmate.

The Eighth Amendment prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). "In order to sustain this constitutional claim under 42 U.S.C. § 1983, a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); citing *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002)).

Defendants state that "for purposes of the instant Motion, [they] concede that gender dysphoria is a serious medical need in the constitutional sense [but] Plaintiff cannot satisfy the subjective component of deliberate indifference." (Doc 68 at 10.) Defendants add that the issue in this case is "whether, at the time of the care at issue, Dr. Zaloga **was aware** that Plaintiff suffered from gender dysphoria." (*Id.*)

A guiding principle in the deliberate indifference inquiry is that, in general, "[d]eliberate indifference is a subjective state of mind that can, like any other form of scienter, be proven through circumstantial evidence and witness testimony." *Pearson*, 850 F.3d at 535 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (noting that, when

"intent becomes critical," it is "important that the trier of fact hear" the defendant's "testimony in order to assess his credibility"); *Campbell v. Sikes*, 169 F.3d 1353, 1372 (11th Cir. 1999) ("[P]laintiffs necessarily must use circumstantial evidence to establish subjective mental intent."); *In re Kauffman,* 675 F.2d 127, 128 (7th Cir. 1981) ("Intent ... must be gleaned from inferences drawn from a course of conduct.")).[5]

In assessing the deliberate indifference prong of an Eighth Amendment medical care claim,

> there is a critical distinction "between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment." *United States ex. rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979). Because "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation," *Monmouth Cty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 346 (3d. Cir. 1987), when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights").

850 F.3d at 535. The deliberate indifference inquiry in an adequacy of care claim involves both a subjective and objective component because "evaluating whether medical treatment is adequate presents an objective question." *Pearson*, 850 F.3d at 535. However, "the deliberate indifference prong of a delay or denial of medical treatment claim involves only

---

[5] *Pearson* considered whether expert testimony is necessary in a deliberate indifference case, specifically in the second prong of the inquiry. 850 F.3d at 535. Though that question is not before the Court, the general guidance provided in the decision is applicable here. However, the Court notes that Plaintiff has provided an expert opinion in this case regarding Plaintiff's gender dysphoria diagnosis, treatment for the diagnosis, and Dr. Zaloga's related conduct. (Expert Report (Pl.'s Ex. G), Doc. 77-7.)

one subjective inquiry—since there is no presumption that the defendant acted properly, it

lacks the objective, propriety of medical treatment, prong of an adequacy of care claim." *Id.*

at 537.  Therefore, all that is needed for a jury to find deliberate indifference in a delay or

denial of medical care claim "is for the surrounding circumstances to be sufficient to permit a

reasonable jury to find that the delay or denial was motivated by non-medical factors." *Id.*

(citing *Durmer v. O'Carroll*, 991 F.2d 64, 68-69 (3d Cir 1993); *United States v. Michener*,

152 F.2d 880, 885 (3d Cir. 1945)).

Upon consideration of the relevant standard of review, the legal framework within

which Plaintiff's claims must be considered, the Statement of Material Facts Not in Dispute

in Support of the Motion for Summary Judgment of Defendants Edward Zaloga, M.D. and

Correctional Care, Inc. (Doc. 66)  and Plaintiff's response thereto (Doc. 77), the Court

readily determines that genuine issues of material fact are in dispute, allegedly conflicting

evidence must be weighed, and the credibility of witnesses are at issue.

By way of example, Plaintiff denies Defendants' "undisputed" fact that "[d]espite the

effort to investigate Plaintiff's claims, the Medical Department did not receive any

documents or information substantiating the claim that Plaintiff had been formally diagnosed

with gender dysphoria."  (Doc. 66 ¶ 13; Doc. 77 ¶ 13.)  Plaintiff disputes the efficacy of

Defendant's reliance on the single note cited.  (Doc. 66 ¶ 15; Doc. 77 ¶ 15.)  In doing so,

Plaintiff points to several other notes from SCI Houtzdale post-dating the CRNP note upon

which Defendants rely, asserting that the later records demonstrate her gender dysphoria

diagnosis by competent medical professionals.  (*See, e.g.*, Doc. 77 ¶¶ 12-15.)

The parties' disparate assessments of these records present disputed issues of

material fact and allegedly conflicting evidence that must be weighed.  Defendants' position

regarding whether Plaintiff had been diagnosed with gender dysphoria also presents a

matter of credibility which must be weighed by a jury.  As set out above, deliberate

indifference is a subjective state of mind and, because intent is critical, it is important that

the trier of fact hear Dr. Zaloga's testimony in order to assess his credibility.  *Pearson*, 850

F.3d at 535; *Durmer*, 991 F.2d at 69.  Thus, summary judgment on Plaintiff's constitutional

claim against Dr. Zaloga in Count II is appropriately denied.[6]

Similarly, Defendants have not shown that they are entitled to summary judgment on

Plaintiff's claim against CCI, an entity owned and operated exclusively by Dr. Zaloga and

_____

[6]  Defendants contend that this is an adequacy of care claim and Plaintiff maintains that it is a denial of care claim.  Defendants state that "the summary judgment record reveals that Plaintiff received continual medical attention and monitoring, as well an investigation into her claimed diagnosis of gender dysphoria." (Doc. 68 at 8.)  Plaintiff states that this is "a case of complete denial of care for Gender Dysphoria.  First and foremost, this was in the form of denying hormone medication" and she did not receive psychotherapy or counseling for treatment of gender dysphoria.  (Doc. 78 at 20.)  Though Defendants correctly state that Plaintiff received medical attention and monitoring and her claimed gender dysphoria diagnosis was investigated, Defendants' statement does not indicate any recognition of or treatment for gender dysphoria.  Rather, the record shows that, aside from the 3-day period when CRNP Iannuzzi recognized that Plaintiff had been diagnosed with gender dysphoria and ordered hormone medication, *see supra* p.3, Defendants denied that Plaintiff suffered from gender dysphoria and ultimately relied on a single note to do so.  (*See, e.g.*, Doc. 66 ¶¶ 14-19.)  Thus, this case fits more in the denial-of-care category.  However, the Court's conclusion that summary judgment is not appropriate on Plaintiff's constitutional claim against Dr. Zaloga would be the same under the more deferential adequacy of care standard because the record does not establish the objective adequacy of Dr. Zaloga's consideration of Plaintiff's alleged gender dysphoria diagnosis.  *See Pearson*, 850 F.3d at 535.

the only medical care provider at the Prison at the relevant time.  (Doc. 78 at 7 (citing Ex. D

(Iannuzzi Dep.) at 7, Doc. 77-4).)  The parties agree that this claim is governed by the

standards set out in *Monell v. Dep't of Social Services*, 43 U.S. 658 (1978).  (Doc. 68 at 14;

Doc. 78 at 29.)  They further agree that CCI liability depends on whether Plaintiff can show

that the alleged constitutional violation was caused by a policy or custom adopted by CCI.

(*Id.*)

Defendants first assert that Plaintiff's failure to establish a constitutional violation is

fatal to her claim against CCI.  (Doc. 68 at 15.)  This assertion does not show entitlement to

summary judgment because, as discussed above, the issue of whether Defendants acted

with deliberate indifference to a serious medical need must in this case, be decided by a

jury.

Defendants also argue that summary judgment on the claim against CCI is

appropriate because

> there is simply no evidence in the record to support a finding that a policy,
> practice, or custom caused any violation of Plaintiff's rights.  The record in this
> case is clear that Dr. Zaloga followed an appropriate procedure to obtain
> records and evidence to investigate Plaintiff's claimed diagnosis of gender
> dysphoria, and evaluated Plaintiff's request for hormone medications on an
> individualized basis based upon those records.

(Doc. 68 at 15.)

As set out above, disputed issues of fact arise in conjunction with Dr. Zaloga's

evaluation of Plaintiff's claimed diagnosis of gender dysphoria.  Defendants do not address

Plaintiff's assertions regarding the lack of policy addressing the unique medical needs,

including hormone treatment, for transgender inmates, and that other inmates had been

denied appropriate treatment.  (*See, e.g.,* Doc. 1 ¶¶ 66-76; Doc. 78 at 14-16, 30.)   Thus,

Defendants have not shown entitlement to summary judgment on their claim against CCI.

## B. Qualified Immunity

Defendants assert that Dr. Zaloga is entitled to qualified immunity.  (Doc. 68 at 13.)

The Court concludes that Defendants have not made the requisite showing.

In *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 211 L. Ed. 2d 164, 2021 WL 4822662

(2021), the Court stated that

> "Qualified immunity attaches when an official's conduct does not violate clearly
> established statutory or constitutional rights of which a reasonable person
> would have known." *White v. Pauly*, 580 U. S. ——, ——, 137 S.Ct. 548, 551,
> 196 L.Ed.2d 463 (2017) (*per curiam*) (internal quotation marks omitted). A right
> is clearly established when it is "sufficiently clear that every reasonable official
> would have understood that what he is doing violates that right." *Mullenix v.
> Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (*per curiam*)
> (internal quotation marks omitted). Although "this Court's case law does not
> require a case directly on point for a right to be clearly established, existing
> precedent must have placed the statutory or constitutional question beyond
> debate." *White*, 580 U. S., at ——, 137 S.Ct., at 551 (alterations and internal
> quotation marks omitted). This inquiry "must be undertaken in light of the
> specific context of the case, not as a broad general proposition." *Brosseau v.
> Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per
> curiam*) (internal quotation marks omitted).

*Rivas-Villegas*, 2021 WL 4822662, at \*7-8.  As noted by Defendants, the Supreme Court

has stated that "qualified immunity 'protects all but the plainly incompetent or those who

knowingly violate the law.'"  (Doc. 68 at 13 (quoting *Malley v. Briggs*, 475 U.S. 335, 341

(1986)).)

Defendants argue that

> [i]t simply cannot be said that every reasonable person in Dr. Zaloga's shoes
> would have known that his conduct was violative of Plaintiff's rights, nor can it
> be said that Dr. Zaloga's conduct was "plainly incompetent" or "knowingly"
> violative of the law. Once again, Dr. Zaloga exercised due diligence in obtaining
> and reviewing the relevant information related to Plaintiff's alleged diagnosis of
> gender dysphoria, and upon determining that there was an utter lack of
> evidence of such a diagnosis, made a medical decision that the risks
> associated with the requested treatment outweighed the benefits.

(Doc. 68 at 13-14.)

Defendants' qualified immunity argument hinges on the propriety of Dr. Zaloga's conduct related to Plaintiff's claimed diagnosis of gender dysphoria. Because the Court has found that there are issues of fact and credibility related to this conduct, the argument supporting the claimed entitlement to qualified immunity is without foundation. Therefore, on the current record, it cannot be definitively said that Dr. Zaloga was not "plainly incompetent" or that he did not "knowingly violate the law." *Malley* 475 U.S. at 341. Nor can it be determined that reasonable doctors would not have understood that the denial of care in this case violated a constitutional right. *Mullenix*, 577 U.S. at 11. Accordingly, the Court cannot conclude that Dr. Zaloga is entitled to qualified immunity.[7]

---

[7] Plaintiff's opposition brief lists numerous appellate and district court cases in support of the proposition that "[c]ourts across the nation are routinely holding that failure to treat gender dysphoria is a constitutionally cognizable claim to such an extent that the right to treatment is clearly established." (Doc. 78 at 26.) Defendants do not respond to this argument in their reply brief. (See Doc. 79 at 7.)

## C. Punitive Damages

Finally, Defendants argue that Plaintiff's claim for punitive damages fails as a matter of law. (Doc 68 at 18.) Recognizing that, "[i]n the context of a deliberate indifference claim, punitive damages can be awarded where the 'defendant's conduct is shown to be motivated by an evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others'" (Doc 68 at 18-19 (quoting *Alexander v. Riga*, 208 F.3d 419, 430-31 (3d Cir. 2000)), Defendants assert that the record cannot support any such finding here (*id.* at 19). Specifically, Defendants aver that "the record shows that Plaintiff's alleged diagnosis was carefully and thoroughly investigated by Dr. Zaloga, and that a decision regarding his request for hormone medications was carefully considered and rendered based upon an assessment of the risks and benefits of the treatment at issue." (*Id.* at 19.) Given the Court's determination that issues of fact and credibility preclude summary judgment on Plaintiff's constitutional claims, the Court cannot agree that the record inarguably shows that Dr. Zaloga carefully and thoroughly arrived at his decisions regarding Plaintiff's gender dysphoria diagnosis and treatment requirements. Therefore, any decision on Plaintiff's entitlement to punitive damages would be premature.

## V. CONCLUSION

For the reasons discussed above, Defendants Correctional Care, Inc. a/k/a Correctional Care, PC's and Dr. Edward Zaloga's Motion for Summary Judgment Pursuant

to Federal Rule of Civil Procedure 56 (Doc. 65) will be granted in part and denied in part.

The Motion will be granted insofar as summary judgment is warranted in favor of

Defendants on Plaintiff's IIED claim.  The motion will be denied in all other respects.  A

separate Order will be filed with this Memorandum Opinion.

Robert D. Mariani
United States District Judge